Number 241822, Belia Arlen Ocasio et al. v. Comision Estatal de Elecciones et al. Will Counsel for Appellants please come up and introduce yourself on the record to begin. Good morning, Your Honors. On behalf of Appellants in this case, may it please the Court. As a preliminary matter, I would like to request four minutes for rebuttal. Okay, you have four minutes for rebuttal. Please proceed. So, Your Honors, this appeal presents two straightforward little questions. The first issue here is the PROMESA stay as applicable to the Motion for Attorney's Fees and the discharge injunctions containing the POA as it relates to the Motion for Attorney's Fees also. This ground alone resolves the appeal in this case, and I don't think the Court should or needs to evaluate the merits of the fee award in this case. As the record shows, the Motion for Attorney's Fees in this case, after the complaint was filed, was entered and was filed during the pendency of the automatic stay that PROMESA obviously after 2017 started. So, once the Motion for Attorney's Fees was filed, it was in direct violation of the automatic stay, even if the... And yet, you all did not bring that to the District Court's attention until 2024, correct? Yes, Your Honor. After he had already decided the merits. Yes, Your Honor. We do recognize that that argument was raised during the pendency of the Motion for Reconsideration. However, the automatic stay acts... That time it was over, right? Sorry? Sorry, Your Honor. The automatic stay was over by that point, right? So, you waited until after the stay had dissolved to argue their filing was void years ago? Well, Your Honor, certainly when the Motion for Attorney's Fees was filed, the automatic stay wasn't over. It was in 2020. But after that, when the motion was resolved by the District Court, the stay was over, certainly. It was substituted by a discharge injunction. However, even if the government raised the issue late in the proceedings, the automatic stay operates by itself. So, let's assume this order was null and void. Technically, after the stay is over, this motion could have been filed again, correct? Sorry, Your Honor. Once the stay is lifted, then this motion... What you're saying is this motion should have been filed after the stay is lifted, correct? Or it couldn't have been filed at all at any time? Well, Your Honor, if the motion was filed after the stay was lifted, it would certainly require the Title III Court to lift the stay in the particular case for the motion to proceed. But the stay has been lifted in this case. When the motion was filed, it was... When the motion was filed, it hadn't been lifted, but nobody raised it. But then the stay was lifted. So, the motion could have been filed after the lifting of the stay, correct? Correct. It could have been filed afterwards, but it would be against the discharge injunction in this case. It would have been discharged anyway. I think what we're getting at is let's pay more attention to the discharge language and less to the stay. At least that's my own approach. Yes, Your Honor. Yes, certainly the POA has a certain language that's, for example, the POA claims definition, causes of action definition talks about contingent known or unknown claims. So, in that case, even if, as my friends of the other side argue that the claim that, you know, there were certain notices that were required or they didn't know they had to file it, even if that were the case, the POA provides for discharge of known or unknown claims. Counsel, let me just be very blunt about this. If you are right about the effect of the discharge injunction, then raising it only in 2024 means that a lot of people wasted a lot of time on this issue. Do you agree with that? On the merits issue? On the fee issue. I mean, Your Honor, certainly it was, as I said, I acknowledge it was raised late in the proceedings. However, the automatic stay, I mean, if it's against- I understand what 524A says, that it can't be waived. I'm just saying I'm looking for some acknowledgement that with all the complexities of the PROMESA proceedings, you all, the most directly benefited party from the discharge in this case, did not see it, did not raise it, and as a result, a lot of people, including the district judge and plaintiff's counsel, wasted a lot of time on the fee petition. Your Honor, yes, we acknowledge it was raised late in the proceedings, but however, the record shows that at least four times, the government did raise as a reservation of rights that the title- But never invoked either the stay or the discharge explicitly, which you're relying on now, until the district judge had already decided the merits of the fee petition and you were asking him to reconsider. Correct. That's correct, Your Honor. Okay, but if we rule in your favor, then for all purposes, they can't recover a cent, correct? Your Honor, correct. What do you say to their notice argument? So their in re arch argument at least had some resonance with me when they say they're a known creditor. They didn't receive any specific dates from you. Sure, maybe they saw the news or TV. There's no record. I mean, I don't know if they did or they didn't, but in re arch would suggest that's not required when they're a known creditor. Your Honor, regarding that case, our reading of that case is that that case is really a Chapter 9, Chapter 11 case. It's not a Chapter 9 case. And why should that? Why the difference? What's the reason for the difference? Your Honor, first, the first difference is, as I said, the POA has a specific language that talks about known or unknown claims and causes of action. And also, if we see the supplemental order entered by Your Honor, Judge Afrin, if we see the supplemental order, one of the cases cited in the order is a Title III case in which Judge Swain rejected, directly rejected that argument. And actually citing local rule 2002, she said that the notice that was given in the newspapers in general in the mainland in Puerto Rico, that was sufficient for the notice that the parties were to have been given on the due process. So that argument was rejected directly by Judge Swain in that case that's cited in the supplemental order. So. Do you agree they're a known creditor? Very honored. I mean, for the meaning of the, if I see the meaning of the POA and the text of the POA, it doesn't matter if they're a known or unknown for purposes of the claim being discharged. So if we see that actually in one of the, in one of the, I mean, in one case that is actually not cited in our brief because it was later issued by this court, it's the Sanchez-Acosta case. It was in summer. We can submit a 28-J letter regarding that case. But in that case, this court said it was dismissed like two weeks ago, three weeks ago. This court cited that Judge Swain's order saying that going to local rule 2002, it was sufficient, the notice that was given to creditors in this case. And I posit, Your Honor, that any collateral attack against the notices that were carefully approved by the Title III court should have been brought to that court and could still be brought in general. The plaintiff's position, as I understand it, is they were a known creditor and that Rule 2002 required actual notice, right? Yes, that's their position, yes. Does the Title III court have the power to vary that rule? Yes, Your Honor. If any relief that should, that could be requested to, it has to be through Title III, and the Title III court should evaluate that argument. All of that assumes that the known creditor got notice of the Title III proceedings, right? Well, Your Honor, yes. To hold them to the effects of that order? Correct, Your Honor, but under the Title III interpretation, those notices were sufficient. I mean, if we see the record, if we see a – They clearly are not sufficient under 2002 with the requirement of individual notice to a known creditor. I would have thought your better argument was that these plaintiffs were not a pre-petition creditor and therefore don't fall within the definition of creditor for purposes of Rule 2002. That was certainly to be our argument, Your Honor, and that – I was looking in your reply for some kind of argument to that effect. And that supports our position that Chapter 9 and Chapter 11 are different in the sense that in Ray Arch, it's really a Chapter 11 case. It's not a Chapter 9 case. Arch Wireless dealt with a pre-petition creditor. That's the difference, I think. Yes, Your Honor, that's one of the differences. Thank you. Your Honor, I want to posit something else. It's important to state that plaintiffs in this case, they're not claiming that they didn't have a file. And I mean, Spence claims they're just trying to say that they weren't duly notified, but they aren't arguing that they didn't have to file an admin expense claim. So to that point, I think it's just conceded that they had to do it. The argument really and the controversy is really if they were adequately notified about it. But they're really conceding that they had to file an admin expense claim in this case. Let me ask one question. Let's assume we rule in your favor to the extent, obviously, the stay or discharge applies. Wouldn't this be a case they would at least be entitled to some award of attorney's fees under the vexatious litigation statute because this is something that could have been avoided and the court had to work on this. We're hearing the appeal. It could have been resolved many years ago. Again, it's not that it's your fault, but it's the government's fault. Would that be an alternative or that's not available? Well, Your Honor, we think that as this court has said in other cases, the Ray Arch case, the Municipality of San Juan case, if this court is reviewing an order that is void, I mean, it just voids the whole process and no attorney's fees should be awarded in this case. Thank you, counsel. Let's hear, then, from the ACLU. Will Counsel for the plaintiff please introduce yourself on the record? Good morning, Your Honors. Ryan Perrio from Cobra and Kim Pro Bono Counsel for the Plaintiff Appellees. I'd like to start where we left off, Your Honor, specifically with regards to notice because I think that's the most straightforward way to affirm the orders below without getting into the scope of PROMESA and its exemption. So, if they're right, if they are correct that the claim arose pre-effective date and that PROMESA does not exempt a claim like ours, if they're right about both of those things, then the plaintiffs in this case were known creditors and they were entitled to direct notice from the Commonwealth of certain procedural steps in the bankruptcy like the proof of claim deadline, like the plan before it was confirmed, the confirmation date, and ultimately the confirmation order. And we know that didn't happen here. There's no dispute the plaintiffs weren't on the master service list. We've never heard the commission to say that they actually mailed these things. The only argument that the commission has made is that, well, the plaintiffs must have had actual notice because it was well known in Puerto Rico that these bankruptcy proceedings were ongoing. But that's not enough under the First Circuit's precedent in Arch Wireless. There, in order to satisfy due process, it's incumbent upon the debtor to provide actual notice not just of the bankruptcy but that the plaintiff's claims would be discharged under the bankruptcy so that they can file an administrative claim if they would like to. And the distinction in Arch Wireless was drawing between a Chapter 11 case. It was actually distinguishing between an individual debtor case where the statute is a little bit different, but PROMESA specifically incorporates the federal bankruptcy rules of procedure and Arch Wireless is addressing those rules. So I think it's a distinction without a difference with respect to Arch Wireless. On that point, Counsel, could I ask you the general definitions in the Bankruptcy Code, Title 11, Section 101. Creditor is defined as, quote, an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. Can you help me out with what is the relevant order for relief? The relevant orders for relief? Sorry, the order in the bankruptcy case in the Title 3? The one in the statute. As applied to this case that you say gives you the right to notice. What was the relevant order for relief concerning the debtor? The confirmation of the plan, Your Honor. Plan, not the original filing of the petition? No, the confirmation of the order, Your Honor. Thank you. So in Arch, the final footnote, footnote 7, says that if you had actual notice, that may cure any problem because the bankruptcy laws themselves don't provide the remedy, and the premise of that case is you look to the statute, but then there is the caveat at the end. Now, this notice thing is being raised here. Nobody has ever litigated whether you actually knew what the deadlines were, and it seems like Arch is carving that out to make a difference potentially. How do we deal with that, if you're right about everything else you've said? That's right, Your Honor. So it doesn't cover actual knowledge, but, again, it's not actual knowledge of the bankruptcy proceedings. It's actual knowledge of the discharge injunction. Right, and that was going on in the world, right? You're publishing that pretty broadly, as I understand it, and so it seems like there's a fact question embedded there. Did your clients know about the deadlines, in fact? And it's hard for us to figure that out now here. Yes, Your Honor, but if there was an opportunity to present evidence below, that is certainly something that the commission has waived at this point. So they put in evidence with their notice. It was the plan and the confirmation order. So they did submit some evidence that they said constituted notice. But, see, the problem is, right, the problem is the district judge decided this on a ground that I'm not really seeing anyone defend, that this is just not a Title III case, that doesn't seem to be anyone's argument. So that's her ground. They say, well, look at all the notice we did. We did lots of notice. And now you're saying you did lots of notice but not the right kind of notice. And then I'm reading Arch that says at the very end, that's usually right that known creditors are entitled to a certain kind of notice, but maybe not always because sometimes if there's a lot of notice out there and this known creditor actually knew of it, that may cure the problem. And so procedurally, the way this thing comes before us, I don't see how I can figure out, we can figure out right now, whether your client had actual notice which might, even if you're right about everything you told us, might be a cure. That's certainly right, Your Honor, that you don't need to make that factual determination. But it's just not an issue that this court needs to decide on appeal because it was the commission's burden to put in evidence if they were going to make the argument that we had. But they won. They won, right? I mean, I'm sorry. They, I mean, wait. Below, you won and they should have. What did you want them to say? Because notice wasn't really, was that really joined by anybody below? What should they have said? No, Your Honor. So we won the fee award and the reconsideration motion. And now here on appeal, they are arguing that that was enjoined by the Title III proceedings. And in order for that to be the case, we don't think it is. We've argued that, you know, the scope of PROMESA, the exemption, covers our claim and it's a pre-effective date claim. But if it does, they were required to provide notice so that we could. Their argument was timing. Their argument was timing, right? You say the order is until after the discharge's injunction is over. And they say, no, this is barred because of, you know, that it's either the day, the 1983 action was filed or it's the day they filed the fee petition. Those are the real dates. And that's when the claim became contingent. And that's their lead argument. And then your response here is, even if they're right about that, they're wrong about notice. That's the posture. And your notice argument, if I think they're right about the timing, your notice argument may be right, it may not. And I guess I'm thinking that's an odd way to resolve it when we don't know, we can't get to the bottom of your notice argument, which you tell us is the most straightforward way to resolve the case. Well, Your Honor, I think it's still straightforward because the court doesn't need to make that factual determination because they have the burden of proof on it and they've waived the opportunity to put in evidence on it. So they did attach the plan and the confirmation order to their notice to the district court below. They could have asked for discovery. They could have asked for an evidentiary hearing. They could have put in whatever evidence they had. Somehow they provided notice, notwithstanding the fact that the plaintiffs aren't on the master service list like everybody else who gets notice, and they didn't do any of that. So to remand for a determination of a factual question that the commission never raised until now and is only raising it at the 11th hour to try and get around it, I think, you know, it's just not necessary. This court does not need to consider that fact. But they should have, in your view, they should have said, one, we're right about timing. Two, in case they say notice, we would say in response they had actual notice. That's what should have happened as you see how this should have played out? Yes, it would be one or the other, Your Honor. So either the discharge injunction applies and they didn't provide, they should have defended the fact that, you know, the plaintiff somehow had knowledge notwithstanding the fact that they didn't get notice, or in our position the discharge injunction doesn't apply at all. So it was appropriate that they didn't provide notice. Counsel, let me ask you the same question I asked the opposing counsel. Let's assume that we were to hold that the attorney fee petition is barred by the stay or the discharge. Would you still or would this court be able to still award some attorney fees for vexatious litigation? Because there was litigation below and it's gone all the way up here. It's certainly something that could be explored, Your Honor. I think it depends on the effective date of the claim and, you know, that claim and when that claim would arise, if it was post-effective date. So we'd have to give some consideration to when a claim for vexatious litigation arose. If it's at each and every step that they take a step without raising this argument that they've waived. But it's certainly something that could be considered. Are you aware of any precedent where a debtor has been held liable or sanctionable for failing to raise protections available to it? I am not, Your Honor. I'm not aware of a case to that effect. But when we're talking about waiver, yes, it's that the argument hadn't been raised in a timely fashion and that, you know, had this been raised, there are many steps we could have taken to possibly resolve this issue before we get years down the road. But it's also that the commission took steps in the underlying case that were completely at odds with the positions that it's taking now, in some instances to their success. And it just shows that, you know, we were all on the same page at this time about whether this discharge injunction applied, all moving forward as if it did not. So to turn course now. But they did raise it eventually, right, in the district court? I mean, late, but they raised it, right? Yes, Your Honor. And the district court took it on the merits and said, I reject it. This is not a Title III case, right? Yes, Your Honor. So, I mean, other than, and I'm not deminimizing this when I say other than, but other than the extra work, the district court had the issue, could have said waived, I guess. The district court said, I'm not dealing with this, and we'd have to determine if that's right or wrong. But they didn't choose that path. The district court chose the path of litigating it. So other than wasted time, which is not a de minimis thing, what's the harm here that's other than that? Because it's not a sandbagging in the sense of it's just showing up here for the first time. It did show up in the district court late, but was resolved on the merits. Yes, Your Honor. This is extremely prejudicial to the plaintiffs because it would result, if the commission is correct, in the entire loss of their claim for fees. So by the time that they showed up to say that they believe the discharge injunction applied to this claim, they also made the same point that the bar date had passed two years ago. So that's the key, right, that you lost your opportunity because of how late they told you about the problem? That's right, Your Honor. And was that sort of brought to the ‑‑ so what, as you understand the waiver law, I mean, can this be raised at any time? Can the Commonwealth wait? I mean, I guess this is where the known creditor notice comes in maybe. I mean, can they wait until after all your rights have exhausted and then say, oh, you should have done this, but you didn't? I mean, what is the law about that? No, Your Honor. You know, I don't see a lot of specific case law timing other than the general body of, you know, raise or waive case law, but specifically in this context of how late is too late. I mean, I have to imagine if the issue got all the way up to the Supreme Court and they never raised it, at some point we would say that is too late. I mean, it's different than raise or waive in the normal context, which is just sort of about sandbagging and fairness and we shouldn't decide things that aren't developed. But I think what you're telling me is the lateness, we lost out on our chance because there was a consequence of the lateness, which is something we could have done, we didn't do, and now we're told we're too late when we didn't even know this was a problem. Is that your position? That's right, Your Honor. And I would submit that it's not simply failure to raise an argument. That's a significant part of it. But there were positions taken below, contrary to the positions taken now, that would lead us to believe that we were in agreement that the discharge injunction didn't apply here. So if I can just give the court... Would that be like what was known as judicial estoppel? Yes, Your Honor, whether you call it, you know, waiver, estoppel, ratification, it's a flip side of the same coin. But just to give an example, in the court below, one of the arguments raised against the fee motion was that it was untimely. We should have brought it earlier in time. And they were partially successful in that argument. The district court didn't rule on the fee motion on that ground, but it found that the motion for costs was untimely under the local rules and it declined to award costs. So by taking the position that the motion is both untimely and now changing, and we should have brought it sooner, and now changing course to say, no, you couldn't have brought it at all, it was a violation of the automatic stay, which, to correct my opposing counsel, they never said that in the court below at all. They only invoked the discharge injunction. They've only said, invoked the automatic stay in response to Judge Afram's May order. But, you know, to change course now when they've affirmatively taken steps to indicate their belief that this was outside the discharge injunction would be extremely prejudicial. So, just so to make sure I nail down what your position is, we were lulled to sleep to think, based on the litigation, that we were fine to resolve this fee award through the normal course in the district court. And then only when you get to the motion to reconsider stage do they say, one, no, there's a discharge injunction against that, and two, aha, and it's too late to file a claim with the Title III court. And therefore, you were sort of at that point faced with there's not, I mean, you've made arguments, but there's nothing for us to do because we were lulled to sleep until it was too late? That's correct, Your Honor. I wouldn't call it lulled to sleep. I would call it more of an ambush where they led us to believe in litigation that there was agreement that this was not impacted by the discharge injunction. There are other steps we potentially could have taken, such as potentially filing an admin claim in the Title III court. But now that opportunity has passed. Okay. Thank you, counsel. Thank you, Your Honors. Thank you, counsel. Attorney for appellants, you have a four-minute rebuttal. Again, for the record, Omar Andino on behalf of appellants. Of appellants, sorry. So, Your Honors, first, regarding the lack of adequate notice from my friends on the other side, I just wanted to say that it's common knowledge that this issue has been raised in different proceedings, including by this court, Suas-Ponte, in different cases. For example, in the municipality of San Juan case, this court brought the issue Suas-Ponte, and in other cases pending before this court. And that's why, for example, in Judge Aframe's supplemental order, there was very, very specific questions asked. So our position is that the waiver doctrine doesn't really have an effect on this case, notwithstanding what happened before the district court and the complexities. That seems like a non sequitur. Why does that? So I asked a bunch of questions. Okay. But what they're saying is the litigation, the way this litigation played out, until it was too late, your litigation strategy and filings made them believe that this thing could get litigated to a conclusion in the regular Article III district court process. And only once their deadlines were exhausted did you say, aha, you can't do that. What is the response to that? Which has nothing to do with my questions in the order. Yeah, Your Honor. So we do, again, we do acknowledge it was late in the proceedings, the filing of the notice of injunction. We do acknowledge that. But at the end of the day, as any other creditors that had actual knowledge, that it's a standard that Judge Swain used in the order cited by Your Honor. And, in fact, in that order, if I may, the creditors used the same argument, and Judge Swain rejected the argument of lack of adequate notice, citing the evidence that we do use in the appendix regarding the New York Times and other articles that we. So you basically need to know your position is no matter how late we raise it in this case, they knew they were looking for money from Puerto Rico. That makes them a creditor. You said in your papers Title III defenses exist. And so it was incumbent upon them to go out and figure out, oh, we might be a creditor. We should file by this date, regardless of what you were saying in the litigation itself. Correct, Your Honor. It doesn't matter what happened in the litigation, but for Title III purposes, if this notice is really, really carved out, specific notices were approved by the Title III court, and if those notices were sufficient in that process, people should. But you're not beholden to misdirections that you give them by filing objections on the merits, that talk about the merits of the fee award, so that you're suggesting to them, actually, this isn't a covered expense by the Title III court, it's related to this injunction case, and maybe that's not a creditor, maybe that's something else. I mean, that's what your filings suggest. Well, Your Honor, I understand the question, but I do think that the reservation of rights that the government used below should have the effect of curing that preoccupation in general. And also, as, again, I said, I mean, a lot of people, even people that didn't have a judgment of the merits, the people in general, they saw the notice and they filed an expense claim. And, again, they're not arguing that they're exempt from filing an admin expense claim. I haven't seen that argument in their brief. What they're saying is that they didn't have adequate notice, but they do admit that they had to file an admin expense claim in this case. Where did they admit that? I mean, they're not arguing that they didn't have to file one. So in that sense, they will be conceding that they had to file an admin expense claim in that sense. Thank you, General Andino. And I say general because when I was Solicitor General, Judge Celia used to call me general. So I like the sound of it. Thank you, Judge. Thank you. Ms. Peperio, counsel, thank you for your pro bono work along with counsel and the Wilmer firm. When I was chief judge in the district, I really promoted pro bono work. Keep doing it. Spread the word. And this assures that all litigants have top-notch legal counsel regardless of the cost. So thank you.